IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| STEWART ABRAMSON, individually and on behalf of a class of all person and entities similarly situated, | : | |
| | : | |
| | : | |
| | : | |
| Plaintiff, | : | C.A. No. 26-772-MN |
| | : | |
| v. | : | |
| | : | |
| SAFE LIFE POLICY, LLC, | : | |
| | : | |
| Defendant. | : | |

## **<u>DEFENDANT'S OPENING BRIEF IN SUPPORT OF MOTION TO DISMISS</u>**

OF COUNSEL:

FELLOWS LABRIOLA LLP
Steven M. Kushner
233 Peachtree Street NW Suite 2400
Atlanta, GA 30303
404-586-9200

HEYMAN ENERIO
GATTUSO & HIRZEL LLP
Aaron M. Nelson (#5941)
Denise S. Kraft (#2778)
Catherine M. Lynch (#7326)
222 Delaware Avenue, Ste. 900
Wilmington, DE 19801
302-472-7300

*Attorneys for Defendant Safe Life Policy, LLC*

Dated:  July 30, 2026

**TABLE OF CONTENTS**

FACTUAL ALLEGATIONS ................................................................................................. 1

ARGUMENT ...................................................................................................................... 1

    I.      THE COMPLAINT DOES NOT ALLEGE THAT SAFE LIFE "INITIATED" THE CALLS. ............................................................................................................ 2

    II.    THE COMPLAINT DOES NOT ALLEGES ANY FACTS ESTABLISHING AN AGENCY RELATIONSHIP .......................................................................... 4

          A.     Plaintiff Pleads No Facts Showing Actual Authority—I.E., Safe Life's Control Over The Manner And Means Of The Calls ....................... 4

          B.     Plaintiff Pleads No Facts Showing Apparent Authority, Because The Calls Never Identified Safe Life. ................................................................. 5

          C.     Plaintiff Pleads No Facts Showing Ratification, Which In Any Event Presupposes An Agency Relationship He Has Not Alleged ....................... 6

          D.     The Transfer Of Interested Consumers To Safe Life Does Not Create Agency, And The Contrary Cases Are Readily Distinguishable ................ 6

CONCLUSION .................................................................................................................... 7

i

# TABLE OF AUTHORITIES

**Cases**

*Abramson v. 1 Global Capital, LLC*,
2015 WL 12564318 (S.D. Fla. Sept. 23, 2015) ........................................................................1

*Abramson v. Agentra, LLC*,
2020 WL 7335897 (W.D. Pa. Dec. 14, 2020)............................................................................1

*Abramson v. AP Gas & Elec. (PA), LLC*,
2023 WL 1782728 (W.D. Pa. Feb. 6, 2023) ..............................................................................1

*Abramson v. Connected Mktg., LLC*,
2020 WL 1139251 (N.D. Ill. Mar. 9, 2020)...............................................................................1

*Abramson v. CWS Apartment Homes, LLC*,
2016 WL 6634933 (W.D. Pa. Nov. 8, 2016) ..............................................................................1

*Abramson v. First Am. Home Warranty Corp.*,
2023 WL 2214248 (W.D. Pa. Feb. 24, 2023) ............................................................................1

*Abramson v. Line 5, LLC*,
2025 WL 4071777 (W.D. Pa. Sept. 19, 2025)............................................................................1

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).................................................................................................................1, 4

*Bank v. Consumer Tax Advocate, LLC*,
2025 WL 1640500 (E.D.N.Y. Feb. 5, 2025)..............................................................................3

*Bank v. Spark Energy, LLC*,
2020 WL 5752185 (E.D.N.Y. Sept. 24, 2020) ..........................................................................3

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)....................................................................................................................1

*Bradley v. DentalPlans.com*,
617 F. Supp. 3d 326 (D. Md. 2022).............................................................................................4

*Cabrera v. Gov't Emps. Ins. Co.*,
452 F. Supp. 3d 1305 (S.D. Fla. 2014) ......................................................................................2

*Childress v. Liberty Mut. Ins. Co.*,
2018 WL 4684209 (D.N.M. Sept. 28, 2018) ..............................................................................6

*In re Dish Network, LLC*,
28 FCC Rcd. 6574 (2013), Case ............................................................................................2, 4

*Hossfeld v. Allstate Ins. Co.*,
    179 F.4th 1046 (7th Cir. 2026) ................................................................5, 6, 7

*Hossfeld v. Am. Fin. Sec. Life Ins. Co.*,
    544 F. Supp. 3d 1323 (S.D. Fla. 2021) .........................................................2, 4

*Jones v. Mutual of Omaha Insurance Co.*,
    639 F. Supp. 3d 537 (D. Md. 2022) ................................................................7

*Jones v. Royal Admin. Servs., Inc.*,
    887 F.3d 443 (9th Cir. 2018) .........................................................................4

*Kalu v. Spaulding*,
    113 F.4th 311 (3d Cir. 2024) .........................................................................2

*Nelums v. Mandu Wellness, LLC*,
    2023 WL 5607594 (D.N.M. Aug. 30, 2023) ..............................................4, 5, 6

*Ortega v. DiTommaso Inc.*,
    2025 WL 440278 (W.D. Tex. Feb. 6, 2025) .....................................................7

*Pascal v. Agentra, LLC*,
    2019 WL 5212961 (N.D. Cal. Oct. 16, 2019) .............................................4, 5, 6

*Smith v. Liberty Mut. Ins. Co.*,
    2021 WL 1581017 (D. Mass. Apr. 22, 2021) ...................................................5

*Tuso v. Lennar Corp.*,
    2024 WL 1239474 (S.D. Fla. Mar. 22, 2024) ..................................................2

*Usanovic v. Americana, L.L.C.*,
    775 F. Supp. 3d 1133 (D. Nev. 2025) ......................................................4, 5, 6

*Worsham v. TSS Consulting Grp., LLC*,
    2023 WL 2664203 (M.D. Fla. Mar. 28, 2023) ..............................................2, 4

**Statutes**

47 U.S.C. § 227(b) .................................................................................3, 7

47 U.S.C. § 227(b)(1) ..................................................................................2

Telephone Consumer Protection Act .............................................................2

**Rules**

Rule 8 .....................................................................................................1

Rule 12(b)(6) .............................................................................................1

**Other Authorities**

Restatement (Third) of Agency § 2.03 ........................................................................5

Restatement (Third) of Agency § 4.01 ........................................................................6

Defendant Safe Life Policy, LLC ("Safe Life") files this Motion to Dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted, as follows:

## FACTUAL ALLEGATIONS

Plaintiff[1] alleges that on March 12, 2026, he received a call that delivered artificial and or prerecorded voice messages. Complaint, D.I. 1 ¶ 15. The pre-recorded message did not identify the caller as working for or affiliated with Safe Life. *Id.* ¶ 16. The pre-recorded message did not include any statement or suggestion that the call was made by or on behalf of Safe Life. *Id.* ¶ 16. Plaintiff alleges that during the call, he was transferred to a live licensed insurance agent, who subsequently sent him an email on behalf of himself and Safe Life. *Id.* ¶¶ 19-20.

## ARGUMENT

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007). A claim is plausible only when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and a court need not accept as true legal conclusions couched as factual allegations. *Id.* Rule 8 "does not unlock the doors of

---

[1] Plaintiff has filed multiple similar actions with virtually identical complaints over the last eleven years, including: *Abramson v. Line 5, LLC*, 2025 WL 4071777 (W.D. Pa. Sept. 19, 2025); *Abramson v. AP Gas & Elec. (PA), LLC*, 2023 WL 1782728 (W.D. Pa. Feb. 6, 2023); *Abramson v. First Am. Home Warranty Corp.*, 2023 WL 2214248 (W.D. Pa. Feb. 24, 2023); *Abramson v. Agentra, LLC*, 2020 WL 7335897 (W.D. Pa. Dec. 14, 2020); *Abramson v. Connected Mktg., LLC*, 2020 WL 1139251 (N.D. Ill. Mar. 9, 2020); *Abramson v. CWS Apartment Homes, LLC*, 2016 WL 6634933 (W.D. Pa. Nov. 8, 2016); *Abramson v. 1 Global Capital, LLC*, 2015 WL 12564318 (S.D. Fla. Sept. 23, 2015).

discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678–79.  When deciding a motion to dismiss, a court need accept only "reasonable inference[s]" in favor of the nonmoving party. *Kalu v. Spaulding*, 113 F.4th 311, 325 (3d Cir. 2024) (granting motion to dismiss where "the plaintiff [wa]s not entitled to relief under any reasonable reading of the complaint").

The Telephone Consumer Protection Act imposes liability on the party that "makes" or "initiates" a call using an artificial or prerecorded voice. 47 U.S.C. § 227(b)(1). A plaintiff may proceed on either of two theories: (i) *direct* liability, which "applies only to entities that 'initiate' the telemarketing calls," or (ii) *vicarious* liability, which "in the TCPA context[] is governed by the federal common law of agency." *Tuso v. Lennar Corp.*, 2024 WL 1239474, at *2 (S.D. Fla. Mar. 22, 2024) (quotation omitted). The Complaint fails to plead either theory against Safe Life.

## I. THE COMPLAINT DOES NOT ALLEGE THAT SAFE LIFE "INITIATED" THE CALLS.

Direct liability under the TCPA reaches only the entity that physically places the call. As the FCC has held, "a seller is not directly liable for a violation of the TCPA unless it initiates a call," and "a person or entity 'initiates' a telephone call when it takes the steps necessary to physically place a telephone call." *In re Dish Network, LLC*, 28 FCC Rcd. 6574, 6582–83 (2013) [2]; *accord Worsham v. TSS Consulting Grp., LLC*, 2023 WL 2664203, at *5 (M.D. Fla. Mar. 28, 2023). Courts thus confine direct liability to "entities that 'initiate' the telemarketing calls," and "[t]his generally does not include persons or entities . . . that might merely have some role, however minor, in the causal chain that results in the making of a telephone call." *Tuso*, 2024 WL 1239474, at *2-3 (quoting *Hossfeld v. Am. Fin. Sec. Life Ins. Co.*, 544 F. Supp. 3d 1323, 1331 (S.D. Fla. 2021)); *see also Cabrera v. Gov't Emps. Ins. Co.*, 452 F. Supp. 3d 1305, 1316 (S.D. Fla. 2014)

---

[2]    Case attached as **Exhibit A** for ease of reference since it was an FCC Proceeding.

("[B]ecause GEICO did not make or initiate any of the calls at issue in this action, there can be no direct liability against GEICO under the TCPA.").

The Complaint does not—and cannot—allege that Safe Life physically placed the call to Plaintiff. To the contrary, Plaintiff's own allegations concede that he "received a call that delivered artificial and or prerecorded voice messages" with no indication of who placed the call. D.I. 1 ¶¶ 15-16.  Plaintiff only attributes the calls to Safe Life's "affiliates, agents, and/or other persons or entities acting on Defendant's behalf." Compl. ¶¶ 47, 49, 50. Those hedged, disjunctive allegations are an admission that Plaintiff does not know who placed the calls and cannot allege that Safe Life did. That is precisely the pleading that courts reject as insufficient for direct liability. *See Bank v. Spark Energy, LLC*, 2020 WL 5752185, at *5 (E.D.N.Y. Sept. 24, 2020) (dismissing § 227(b) claim where "not one single factual statement [in the complaint] connect[s] the alleged calls to Defendant") (quotation omitted).

The point is reinforced by the content of the call itself. The prerecorded message Plaintiff quotes—delivered by a voice identifying itself only as "Sophie" and referencing a generic "senior final expense program"—never identified Safe Life. D.I. 1 ¶ 16. A complaint that does not allege that the prerecorded call identified the defendant, and does not connect the caller or any callback number to the defendant, fails to state a direct-liability claim. *Bank v. Consumer Tax Advocate, LLC*, 2025 WL 1640500, at *3 (E.D.N.Y. Feb. 5, 2025) (report & recommendation adopted by district court) (recommending dismissal where the complaint alleged only that "a telephone call was placed" and, ultimately, that it "was made pursuant to contracts," with "no direct allegation" connecting any defendant to the call).

Nor can Plaintiff manufacture direct liability from the fact that, after the call, he was transferred to a separate licensed agent ("Michael Springfield") who later referenced Safe Life.

D.I. 1 ¶¶ 19–21. The transferred agent's after-the-fact self-identification does not establish that Safe Life placed the prerecorded call. *See Worsham*, 2023 WL 2664203, at *5 (representations that a live speaker "worked for" the defendant were "simply not enough" and constituted inadmissible hearsay; plaintiff "had not established that either Defendant ever initiated any of the calls"). Because the Complaint does not plausibly allege that Safe Life initiated the calls, the direct-liability theory must be dismissed.

## II.    THE COMPLAINT DOES NOT ALLEGES ANY FACTS ESTABLISHING AN AGENCY RELATIONSHIP

Because Safe Life did not place the call, Plaintiff can prevail only by adequately pleading vicarious liability under "federal common law agency principles." *Dish Network*, 28 FCC Rcd. at 6584. A seller is not "strictly liable for all actions taken by their telemarketers;" liability attaches only where the plaintiff pleads facts establishing agency through (a) actual authority, (b) apparent authority, or (c) ratification. *Bradley v. DentalPlans.com*, 617 F. Supp. 3d 326, 338 (D. Md. 2022) (citing *id*.); *see Pascal v. Agentra, LLC*, 2019 WL 5212961 (N.D. Cal. Oct. 16, 2019). A plaintiff "must allege some facts regarding the relationship between an alleged principal and agent" and "cannot simply allege general control in a vacuum." *Nelums v. Mandu Wellness, LLC*, 2023 WL 5607594, at *8 (D.N.M. Aug. 30, 2023) (quotation omitted). Plaintiff pleads no such facts here; his agency allegations are the paradigmatic "[t]hreadbare recitals" rejected in *Iqbal*.

### A.    Plaintiff Pleads No Facts Showing Actual Authority—I.E., Safe Life's Control Over The Manner And Means Of The Calls

Actual authority requires that the principal "controlled, or had the right to control," the "manner and means" of the telemarketing campaign, including the power to give interim instructions. *Usanovic v. Americana, L.L.C.*, 775 F. Supp. 3d 1133, 1140 (D. Nev. 2025); *see Jones v. Royal Admin. Servs., Inc.*, 887 F.3d 443, 449 (9th Cir. 2018). The Complaint contains no allegation that Safe Life directed the caller's scripts, dialing technology, call volume, target lists,

4

hours, or geography—nothing about control at all. It offers only the conclusion that unnamed "persons or entities" acted "on Defendant's behalf." D.I. 1 ¶¶ 47, 49. That is legally insufficient. In *Usanovic*, the court dismissed with prejudice where the plaintiff alleged far more—trainings, recommended dialers and vendors, and scripts—because she did not allege those practices were *required* or that the seller supervised or directed the calls. Plaintiff here alleges even less.

### B.   Plaintiff Pleads No Facts Showing Apparent Authority, Because The Calls Never Identified Safe Life.

Apparent authority "arises from the principal's manifestations to a third party" and "cannot be established merely by showing" the conduct of the purported agent. *Pascal*, 2019 WL 5212961, at \*4 (quotation omitted); *see* Restatement (Third) of Agency § 2.03. There must be "something said or done by [the principal] on which [the plaintiff] reasonably relied." *Id.* The Complaint identifies no manifestation by Safe Life to Plaintiff. Indeed, it forecloses apparent authority: the prerecorded call did not mention Safe Life at all [D.I. 1 ¶ 16], so nothing Safe Life allegedly "said or done" could have led Plaintiff to believe the caller acted on Safe Life's behalf. *Cf. Nelums*, 2023 WL 5607594, at \*4 (dismissing where the messages "never identified any seller or sponsor"). The Seventh Circuit confirmed the principle: "only the words or conduct of the alleged principal, not the alleged agent, establish the . . . authority of an agent," and a caller's own statement that it is calling "on [the seller's] behalf" is insufficient. *Hossfeld v. Allstate Ins. Co.*, 179 F.4th 1046, 1056 (7th Cir. 2026). The transferred agent's later reference to Safe Life is therefore doubly beside the point—it is the purported agent's statement (that he works "*with*" not for Safe Life), not Safe Life's, and Plaintiff alleges no manifestation by Safe Life and no reasonable reliance. *See Smith v. Liberty Mut. Ins. Co.*, 2021 WL 1581017, at \*5 (D. Mass. Apr. 22, 2021) (no apparent authority

where the complaint pleaded no manifestation by the seller and did not allege that "anyone on the calls said they were calling on behalf of Liberty Mutual").

### C. Plaintiff Pleads No Facts Showing Ratification, Which In Any Event Presupposes An Agency Relationship He Has Not Alleged

Ratification is "the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority." Restatement (Third) of Agency § 4.01. But "the principal-agent relationship is still a requisite, and ratification can have no meaning without it." *Pascal*, 2019 WL 5212961, at *4 (quotation omitted). Having failed to allege any agency relationship, Plaintiff cannot rest on ratification. He also pleads no facts that Safe Life knew of the specific unlawful calls and knowingly accepted their benefits—another independent deficiency. *See id.*; *Usanovic*, 775 F. Supp. 3d at 1140–41 (rejecting ratification absent allegations that the seller knew of the violating calls or received a benefit from them).

### D. The Transfer Of Interested Consumers To Safe Life Does Not Create Agency, And The Contrary Cases Are Readily Distinguishable

Plaintiff will likely argue that the "warm transfer" to Michael Springfield supplies the missing agency link. It does not. Courts squarely hold that a lead generator's transfer of an interested consumer to the seller's representative—to complete a sale—does not establish that the seller controlled, supervised, or maintained the requisite relationship with the initiator of the call. *Nelums*, 2023 WL 5607594, at *4 (following *Childress v. Liberty Mut. Ins. Co.*, 2018 WL 4684209 (D.N.M. Sept. 28, 2018), as quoted in *Nelums*, 2023 WL 5607594, at *9) (holding that where "the initial telemarketer transferred the plaintiff to the defendant's in-house representative to complete the purchase," those facts were "insufficient to establish that the defendant exerted control over the initiator of the call").

That conclusion is reinforced by the Seventh Circuit's recent decision in *Hossfeld,* 179 F.4th, at 1055-56, which reversed a finding of liability against a seller on closely analogous facts:

6

a telemarketer screened consumers and transferred only interested prospects, and the calling had been subcontracted down a chain the seller neither knew of nor directed. The court held the seller was not vicariously liable under any agency theory absent an affirmative manifestation of authority, emphasizing that "[a]gency relationships are not the default" and that the party asserting agency bears the burden of proving it. *Id.* at 1055. The screening-and-transfer model alleged here—in which interested consumers were routed to Safe Life *or to a competitor*—is the hallmark of an independent lead generator acting for its own account, not a controlled agent of Safe Life.

The decisions denying dismissal on transfer facts only underscore what is missing here. In *Ortega v. DiTommaso Inc.*, 2025 WL 440278, at *6 (W.D. Tex. Feb. 6, 2025), the caller transferred the plaintiff directly to an *owner* of the defendant, who then texted the plaintiff from the defendant's own business—facts tracing the call to the defendant. And in *Jones v. Mutual of Omaha Insurance Co.*, 639 F. Supp. 3d 537 (D. Md. 2022), the plaintiff alleged the seller controlled the manner and means of the campaign (dictating call volume and permissible states, requiring promotion of its products, and retaining the right to bar prerecorded technology) and was transferred to a person who identified as the seller's *employee*. Here, by contrast, the prerecorded call never identified Safe Life, and Plaintiff alleges no control whatsoever. The Complaint therefore falls on the *Nelums*/*Childress* side of the line, not the *Ortega*/*Jones* side.

**CONCLUSION**

Because the Complaint does not plausibly allege that Safe Life initiated the calls or that any caller acted as Safe Life's agent, it fails to state a claim under 47 U.S.C. § 227(b). Safe Life respectfully requests that the Court dismiss the Complaint in its entirety.

7

HEYMAN ENERIO
GATTUSO & HIRZEL LLP

*/s/ Denise S. Kraft*
Aaron M. Nelson (#5941)
Denise S. Kraft (#2778)
Catherine M. Lynch (#7326)
222 Delaware Avenue, Ste. 900
Wilmington, DE 19801
302-472-7300
anelson@hegh.law
dkraft@hegh.law
clynch@hegh.law
*Attorneys for Defendant Safe Life Policy, LLC*

OF COUNSEL:

FELLOWS LABRIOLA LLP
Steven M. Kushner
233 Peachtree Street NW Suite 2400
Atlanta, GA 30303
404-586-9200
skushner@fellab.com

Dated:  July 30, 2026

8