## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

STEWART ABRAMSON, individually and on behalf of a class of all persons and entities similarly situated,

        Plaintiff

vs.

SAFE LIFE POLICY, LLC

        Defendant.

Case No. 26-cv-772-MN

## <u>PLAINTIFF'S OPPOSITION TO THE DEFENDANT'S MOTION TO DISMISS</u>

Dean R. Roland (No. 6459)
**COOCH AND TAYLOR, P.A**
1000 North West St., Suite 1500
P.O. Box 1680
Wilmington, DE 19899-1680
(302) 984-3851
droland@coochtaylor.com

Anthony I. Paronich,  *Pro Hac Vice*
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(508) 221-1510
anthony@paronichlaw.com

*Attorney for Plaintiff and the Proposed Class*

# **TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................... 1

BACKGROUND ............................................................................................................... 1

ARGUMENT .................................................................................................................... 2

    I. The Complaint Plausibly Alleges that Defendant Directly Initiated the Telemarketing Calls. ............................................................................................................................. 2

    II. Defendant's Agency Arguments Address a Theory Plaintiff Does Not Assert. ........... 11

CONCLUSION................................................................................................................. 12

i

# TABLE OF AUTHORITIES

**Cases**

*Adam v. CHW Grp., Inc.*,
 2021 U.S. Dist. LEXIS 170620, 2021 WL 7285905 (N.D. Iowa Sept. 9, 2021)...................... 7

*Bank v. Consumer Tax Advocate, LLC*,
 No. 1:23-cv-09229-HG-CLP, 2025 WL 229558 (E.D.N.Y. Feb. 25, 2025) .......................... 10

*Bank v. Spark Energy, LLC*,
 No. 19-CV-4478 (PKC) (LB), 2020 WL 5752185, 2020 U.S. Dist. LEXIS 175830 (E.D.N.Y.
 Sept. 24, 2020), *aff'd*, 2021 U.S. App. LEXIS 16946 (2d Cir. June 8, 2021)........................ 11

*Bradshaw v. CHW Grp., Inc.*,
 763 F. Supp. 3d 641 (D.N.J. 2025) ....................................................................................... 7

*Consol. Grain & Barge, Inc. v. Anny*,
 No. CIV.A. 11-2204, 2013 WL 486687 (E.D. La. Feb. 6, 2013) ............................................ 4

*Ford v. USHealth Group, Inc.*,
 No. 3:19-cv-00276, 2020 U.S. Dist. LEXIS 63040 (W.D.N.C. Apr. 8, 2020)......................... 8

*In re Dish Network, LLC*,
 28 FCC Rcd. 6574  (2013)..................................................................................................... 12

*Jubb v. CHW Group, Inc.*,
 No. 2:23-cv-00633, 2025 U.S. Dist. LEXIS 59172 (D.N.J. Mar. 28, 2025) ........................... 9

*Katz v. CHW Grp., Inc.*,
 2023 WL 6445798 (W.D. Ark. Sept. 29, 2023)...................................................................... 7

*Kline v. United Northern Mortgage Bankers Ltd.*,
 No. 4:18-CV-00489, 2018 WL 4404674 (M.D. Pa. Sept. 17, 2018)....................................... 9

*Marks v. Unique Lifestyle Vacations, LLC*,
 2024 WL 1051974 (E.D. Pa. Mar. 11, 2024).......................................................................... 7

*Slominski v. Globe Life Inc.*,
 No. 7:23-CV-1081-D, 2024 U.S. Dist. LEXIS 24378 (E.D.N.C. Feb. 12, 2024) ................... 8

*Smith v. Am.-Amicable Life Ins. Co.*,
 2022 U.S. Dist. LEXIS 62115  (E.D. Pa. Apr. 4, 2022) .......................................................... 7

*Stemke v. Marc Jones Constr., LLC*,
 No. 5:21-cv-274-30 PRL, 2021 U.S. Dist. LEXIS 181916 (M.D. Fla. Sep. 23, 2021) ............ 7

ii

*Swierkiewicz v. Sorema N. A.*,
    534 U.S. 506 (2002) ............................................................................................................... 4

*Taylor v. Suntuity Solar L.L.C.*,
    No. 8:23-cv-00694-MSS-AEP, 2024 U.S. Dist. LEXIS 38838 (M.D. Fla. Mar. 6, 2024) ....... 7

*Worsham v. TSS Consulting Group, LLC*,
    No. 6:18-cv-1692-LHP, 2023 WL 2664203 (M.D. Fla. Mar. 28, 2023) .......................... 11, 12

**Statutes**

Telephone Consumer Protection Act ..................................................................................... passim

**Rules**

Federal Rule of Civil Procedure 12(b)(6) .............................................................................. 1, 2, 10

Federal Rule of Civil Procedure 8 ............................................................................................... 10

## INTRODUCTION

Plaintiff's Complaint alleges a straightforward prerecorded telemarketing campaign. Defendant called Plaintiff and delivered a prerecorded message promoting a "senior final expense program." The prerecorded message then immediately transferred Plaintiff to licensed insurance agent Michael Springfield, who continued the same insurance solicitation and thereafter sent Plaintiff an email identifying himself with "Safe Life Insurance" and confirming that he worked with Defendant Safe Life Policy, LLC and its owner. Accepting those allegations as true and drawing all reasonable inferences in Plaintiff's favor, the Complaint plausibly alleges that Defendant initiated the challenged call. Defendant's contrary argument asks the Court to disregard the continuous nature of the solicitation, resolve factual questions concerning the internal mechanics of Defendant's telemarketing campaign before discovery, and draw competing inferences in Defendant's favor. Rule 12(b)(6) permits none of those things.

## BACKGROUND

Plaintiff alleges that Defendant Safe Life Policy, LLC initiated a telemarketing campaign promoting its insurance products through the use of artificial or prerecorded voice messages. ECF No. 1 ¶¶ 3, 12. Plaintiff further alleges that Defendant placed artificial or prerecorded telemarketing calls to Plaintiff's residential telephone number without Plaintiff's prior express consent. *Id.* ¶¶ 13–18, 22–27.

On March 12, 2026, Plaintiff received a prerecorded telemarketing call advertising a "senior final expense program." *Id.* ¶¶ 15–18. The prerecorded message promoted insurance products by informing Plaintiff that he qualified for a program providing final expense coverage and other insurance-related benefits. *Id.* ¶ 16. Rather than ending with the prerecorded message,

the call immediately transferred Plaintiff to a live licensed insurance agent, Michael Springfield. *Id.* ¶ 19.

Plaintiff alleges that Mr. Springfield subsequently confirmed his connection to Defendant by sending Plaintiff an email identifying himself as being with "Safe Life Insurance" and advising Plaintiff that he worked with Safe Life Policy, LLC and its owner, Michael Killimet. *Id.* ¶¶ 20–21. Plaintiff alleges that these events were all part of a single, uninterrupted telemarketing solicitation promoting Defendant's insurance products and services. *Id.* ¶¶ 12, 15–21.

The Complaint further alleges that Plaintiff never consented to receive Defendant's telemarketing calls, that the calls were unwanted, and that they invaded Plaintiff's privacy and caused the injuries commonly associated with unlawful telemarketing. *Id.* ¶¶ 14, 22–27. Based upon these allegations, Plaintiff asserts a claim for direct liability under the TCPA arising from Defendant's use of artificial or prerecorded voice messages to market its own insurance products. *Id.* ¶¶ 46–50.

**ARGUMENT**

**I.    The Complaint Plausibly Alleges that Defendant Directly Initiated the Telemarketing Calls.**

In essence, the Defendant attempts another variation of the classic "we didn't do it" defense by disguising it as a challenge to the Plaintiff's allegations of liability at the pleadings stage. Rule 12(b)(6) is not an appropriate device for testing the truth of what is asserted in the complaint or for determining whether the plaintiff has any evidence to back up what is in the complaint. *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 511 (2002). However, that's precisely what the Defendant attempts to do here, making a red-herring argument that the Plaintiff has failed to state a claim because it has allegedly named the wrong defendant. But that's a "red herring" that begs the question "who did, then?" *See Consol. Grain & Barge, Inc. v. Anny*, No. CIV.A. 11-2204, 2013

2

WL 486687, at *6 (E.D. La. Feb. 6, 2013). Nevertheless, the Plaintiff has met his burden of pleading facts sufficient to give rise to the inference that the Defendant placed the illegal calls at issue here. Defendant's contention that Plaintiff fails to plausibly allege direct liability under the TCPA is incorrect and rests on a mischaracterization of both the pleading standard and the factual allegations in the Complaint.

At the pleading stage, Plaintiff need not prove the precise mechanics of Defendant's telemarketing operation. He need only allege enough facts to permit a reasonable inference that Defendant directly initiated the prerecorded telemarketing call. The Complaint easily clears that bar. Plaintiff expressly alleges that Defendant placed a prerecorded telemarketing call to his telephone on March 12, 2026, promoting a senior final expense insurance program. ECF No. 1 ¶¶ 15–18. The prerecorded message immediately transferred Plaintiff to licensed insurance agent Michael Springfield, who continued the same telemarketing solicitation. *Id.* ¶ 19. Springfield thereafter sent Plaintiff a follow-up email identifying himself with "Safe Life Insurance" and advised Plaintiff that he worked with Safe Life Policy, LLC and its owner. *Id.* ¶¶ 20–21. Taken together, the common purpose of the prerecorded message, the immediate transfer to Springfield, Springfield's identification with Safe Life, and his continuation of the same insurance solicitation plausibly support the allegation that Defendant initiated the telemarketing call.

These allegations describe a single, uninterrupted telemarketing solicitation. The prerecorded message advertised a senior final expense insurance program and, without ending the solicitation, immediately transferred Plaintiff to Springfield. ECF No. 1 ¶¶ 15–19. Springfield then continued the same solicitation by discussing Defendant's insurance products and subsequently followed up by email identifying his affiliation with Safe Life Insurance and Safe Life Policy, LLC. *Id.* ¶¶ 20–21. There was no intervening event, separate solicitation, or independent

3

transaction. Plaintiff remained on the same call and was seamlessly transferred from the prerecorded message to Defendant's licensed insurance agent, who continued marketing the identical insurance product. The most natural inference is that both portions of the call were components of a single telemarketing campaign sent by the same caller.

Defendant nevertheless argues that the Complaint is deficient because the prerecorded portion of the call did not expressly identify Safe Life Policy, LLC. That argument improperly attempts to impose a heightened pleading requirement that appears nowhere in the TCPA. Nothing in § 227(b) requires that a prerecorded telemarketing message expressly identify the entity that initiated the call before liability may attach. Indeed, the prerecorded message here did not identify **any** company, much less a different company. That is entirely consistent with Plaintiff's allegation that Defendant initiated the call and elected to use a generic prerecorded message before transferring Plaintiff to its licensed insurance agent. The relevant question is not whether Defendant's name was spoken during the prerecorded portion of the call, but whether the Complaint plausibly alleges that Defendant initiated the challenged telemarketing communication. It does. The Complaint alleges that the prerecorded message immediately transferred Plaintiff to Defendant's licensed insurance agent, who continued the very same solicitation, identified himself as working with Safe Life Policy, LLC, and followed up by email confirming that affiliation. Those allegations readily support the plausible inference that Defendant initiated the prerecorded call.

Courts routinely reject arguments like Defendant's where, as here, the complaint alleges facts plausibly connecting the challenged call to the defendant and demonstrating that the call promoted the defendant's products or services. Those allegations are sufficient to support a reasonable inference of direct involvement at the pleading stage. Although the prerecorded message did not expressly identify Safe Life Policy, LLC by name, the Complaint alleges an

4

equally compelling factual connection to Defendant: the prerecorded message immediately transferred Plaintiff to Springfield, who identified his affiliation with Safe Life Insurance, represented that he worked with Safe Life Policy, LLC and its owner, continued the same insurance solicitation, and thereafter followed up by email. *Id.* ¶¶ 19–21. "At first glance, these allegations seem like a strong basis for attributing the … [calls and text] to the Defendant. After all, when a person introduces herself across the table as Olivia or Emma --- we generally conclude without much hesitation that is indeed who she is." *See Bradshaw v. CHW Grp., Inc.*, 763 F. Supp. 3d 641, 646 (D.N.J. 2025) ("So too as to the December 8 call. The caller allegedly introduced herself as 'Erica . . . from the Defendant.' Why then would it not be plausible to conclude that she was, in fact, 'Erica . . . from the Defendant'? … The logic of this approach is reflected in the decisions of any number of federal courts. *See, e.g., Marks v. Unique Lifestyle Vacations, LLC*, 2024 WL 1051974, at *3 (E.D. Pa. Mar. 11, 2024); *Katz v. CHW Grp., Inc.*, 2023 WL 6445798, at *4 (W.D. Ark. Sept. 29, 2023); *Smith v. Am.-Amicable Life Ins. Co.*, 2022 U.S. Dist. LEXIS 62115, at *2 (E.D. Pa. Apr. 4, 2022); *Adam v. CHW Grp., Inc.*, 2021 U.S. Dist. LEXIS 170620, 2021 WL 7285905, at *5 (N.D. Iowa Sept. 9, 2021));" *accord Taylor v. Suntuity Solar L.L.C.*, No. 8:23-cv-00694-MSS-AEP, 2024 U.S. Dist. LEXIS 38838, at *15-16 (M.D. Fla. Mar. 6, 2024) ("Plaintiff's allegations are sufficient to plead a claim for Defendant's direct liability under the TCPA at this stage. Plaintiff alleges Defendant initiated the telemarketing calls. Specifically, Plaintiff alleges, 'The Plaintiff received calls from Suntuity Solar on at least January 31 and February 8, 2023.' Plaintiff further alleges: 'During both calls, Plaintiff was initially provided a generic, fake name, "solar of America."' 'The only real company identified during the calls was Suntuity.'" (cleaned up)); *Stemke v. Marc Jones Constr., LLC*, No. 5:21-cv-274-30 PRL, 2021 U.S. Dist. LEXIS 181916, at *6-7 (M.D. Fla. Sep. 23, 2021) ("Sunpro's motion to dismiss goes beyond the pleading

5

to challenge the merits of the alleged facts. Indeed, the crux of Sunpro's motion questions Plaintiff's allegations that Sunpro placed the subject calls. For example, Sunpro argues that Plaintiff fails to 'support' a plausible inference that Sunpro is directly or vicariously liable for the calls Plaintiff received because she does not allege facts that associate Sunpro to the calls allegedly at issue. But a review of the Amended Complaint belies this argument—Plaintiff alleges several times that she or her attorneys confirmed that Sunpro placed the subject calls. Plaintiff even includes the phone numbers and the dates she received the calls."); *see also Slominski v. Globe Life Inc.*, No. 7:23-CV-1081-D, 2024 U.S. Dist. LEXIS 24378, at \*15 (E.D.N.C. Feb. 12, 2024) ("Slominski alleges that on March 14 and March 15, 2023, she received calls and voicemail messages on her cell phone that asked her to call Globe. The voicemail messages concerned 'an insurance plan.' Globe sells insurance plans. … Defendants contend Slominski fails to plausibly attribute the alleged prerecorded voicemail messages to Globe. Slominski, however, plausibly alleges enough information about the contents of the voicemail messages she received on March 14 and March 15, 2023, to survive a motion to dismiss." (cleaned up)).

The same conclusion follows from several additional decisions holding that a plaintiff sufficiently pleads direct TCPA liability by expressly alleging that the defendant placed the challenged communications and supporting that allegation with facts connecting the call, caller, or solicitation to the defendant.

In *Ford v. USHealth Group, Inc.*, No. 3:19-cv-00276, 2020 U.S. Dist. LEXIS 63040, at \*16–17 (W.D.N.C. Apr. 8, 2020), the Court held that the plaintiff adequately pleaded direct liability by alleging that the defendants or their agents made the challenged calls and text messages without consent. The Court found that allegation sufficient, particularly when considered alongside allegations that the soliciting agents publicly identified themselves as working for the defendant

and that the messages themselves indicated they were sent on the defendant's behalf. The allegations here are stronger. Plaintiff expressly alleges that Defendant placed the prerecorded call, and the call immediately transferred him to Michael Springfield, who continued the same insurance solicitation, identified himself with Safe Life Insurance, and thereafter confirmed in writing that he worked with Safe Life Policy, LLC and its owner. As in *Ford*, those supporting facts make the direct-liability allegation plausible rather than merely conclusory.

Similarly, in *Kline v. United Northern Mortgage Bankers Ltd.*, No. 4:18-CV-00489, 2018 WL 4404674, at *1 (M.D. Pa. Sept. 17, 2018), the defendant argued that the plaintiff had not sufficiently alleged that it was itself the maker of the challenged call. The court rejected that argument because the plaintiff clearly alleged that the defendant used dialing equipment to make marketing calls and made prerecorded or artificial-voice calls to the plaintiff's cellular telephone. The court therefore held that the plaintiff's direct-liability TCPA claim survived. Here, Plaintiff likewise expressly alleges that Defendant placed the challenged prerecorded telemarketing call. ECF No. 1 ¶¶ 12, 15–18, 46–50. Those allegations are further supported by the seamless transfer to Defendant's licensed insurance agent and the agent's written confirmation of his relationship with Defendant. Under *Kline*, Plaintiff has alleged more than enough at the pleading stage.

More recently, *Jubb v. CHW Group, Inc.*, No. 2:23-cv-00633, 2025 U.S. Dist. LEXIS 59172, at *9–11 (D.N.J. Mar. 28, 2025), rejected substantially the same argument Defendant advances here. The defendant contended that the complaint failed to identify who physically placed the calls and relied on cases dismissing complaints that contained little or no information connecting the communications to the named defendant. The court held that the plaintiffs adequately pleaded direct liability because they expressly alleged that the defendant placed the calls and supplied additional facts tracing the calls to the defendant, including statements by the

7

callers identifying the defendant and telephone numbers associated with it. The court further explained that a TCPA complaint need not provide extensive information concerning the content and nature of each call. Here too, Plaintiff expressly alleges that Defendant placed the call and provides specific facts tracing it to Defendant: the subject matter of the prerecorded message, the immediate transfer to Springfield, Springfield's continuation of the same solicitation, his identification with Safe Life Insurance, and his written confirmation that he worked with Safe Life Policy, LLC and its owner. Under *Jubb*, those allegations adequately plead direct liability.

Taken together, these decisions demonstrate that a plaintiff need not identify the individual who operated the dialing equipment or plead the defendant's internal telemarketing arrangements. It is sufficient to allege that the defendant placed the call and provide factual circumstances permitting a reasonable inference that the call originated from, or was conducted as part of, the defendant's campaign. Plaintiff has done so here.

Defendant's reliance on contrary authority is likewise misplaced because each of those decisions involved materially different factual allegations or a materially different procedural posture. None involved a complaint alleging, as here, that a generic prerecorded telemarketing message immediately transferred the plaintiff to Defendant's own employee, who continued the same solicitation and thereafter confirmed in writing his affiliation with Defendant.

First, *Bank v. Consumer Tax Advocate, LLC*, No. 1:23-cv-09229-HG-CLP, 2025 WL 229558, at *2 (E.D.N.Y. Feb. 25, 2025), involved a complaint containing virtually no factual allegations connecting the challenged call to the named defendants. There, the plaintiff relied primarily on the conclusory allegation that the calls were made "pursuant to contracts" between various defendants, while the complaint contained no factual allegations regarding the defendants' businesses, their respective roles in the alleged TCPA violation, or any facts linking the subject

8

matter of the call to any particular defendant. The district court expressly distinguished cases in which the allegations tied the content of the call to the defendant's business. Here, by contrast, Plaintiff alleges precisely that factual connection. The prerecorded message promoted a final-expense insurance program, immediately transferred Plaintiff to a licensed insurance agent who continued the same solicitation, and was followed by an email in which the agent expressly identified himself with Safe Life Insurance and confirmed that he worked with Safe Life Policy, LLC and its owner. Those allegations provide the factual nexus that was entirely absent in *Consumer Tax Advocate*.

Likewise, *Bank v. Spark Energy, LLC*, No. 19-CV-4478 (PKC) (LB), 2020 WL 5752185, at *5-6, 2020 U.S. Dist. LEXIS 175830, at *8-12 (E.D.N.Y. Sept. 24, 2020), *aff'd*, 2021 U.S. App. LEXIS 16946 (2d Cir. June 8, 2021), actually illustrates why Plaintiff's Complaint is sufficient. There, although the plaintiff alleged that the calls promoted Spark's services, the complaint contained no nonconclusory factual allegations connecting the calls to Spark. More importantly, the plaintiff later admitted during oral argument that he had intentionally omitted from the complaint the very fact that, after interacting with the prerecorded message, he had been connected to a live representative who identified the call as being made on Spark's behalf. The court therefore concluded that "not one single factual statement" in the complaint connected the calls to the defendant. Here, Plaintiff did exactly what the *Spark Energy* court said was missing. Plaintiff alleged in the Complaint itself that the prerecorded message immediately transferred him to Defendant's licensed insurance agent, that the agent continued the identical insurance solicitation, identified himself with Safe Life Insurance, and thereafter confirmed by email that he worked with Safe Life Policy, LLC and its owner. Unlike *Spark Energy*, the Complaint contains detailed factual

9

allegations connecting the challenged prerecorded call to Defendant, making dismissal inappropriate.

Finally, *Worsham v. TSS Consulting Group, LLC*, No. 6:18-cv-1692-LHP, 2023 WL 2664203, at *5-6 (M.D. Fla. Mar. 28, 2023), arose on a renewed motion for summary judgment after discovery had concluded—not on a Rule 12(b)(6) motion testing the sufficiency of the pleadings. At that stage, the plaintiff was required to produce admissible evidence establishing that the defendants actually initiated the calls. The court concluded that the plaintiff had failed to do so because he produced no evidence connecting the telephone numbers, speakers, or telemarketing campaign to the defendants. Here, Plaintiff is under no obligation to prove Defendant's liability through admissible evidence before discovery. Instead, Plaintiff need only plead facts supporting a plausible inference that Defendant initiated the challenged call. The Complaint does exactly that by alleging a continuous telemarketing solicitation in which the prerecorded message immediately transferred Plaintiff to Defendant's own licensed insurance agent, who continued the same solicitation and later confirmed his affiliation with Safe Life Policy, LLC. Those allegations readily satisfy Rule 8  and distinguish this case from the post-discovery evidentiary record presented in *Worsham*.

Accepting Defendant's argument would effectively require every TCPA plaintiff to plead the internal mechanics of a telemarketing campaign before discovery—information that resides exclusively within the defendant's possession. Rule 8 imposes no such burden. Indeed, the very FCC ruling attached to Defendant's motion recognizes that evidence concerning the relationship between sellers and outside telemarketers is information "which consumers may acquire through discovery" and stresses that nothing in the ruling requires a consumer to provide proof of seller liability at the time the complaint is filed.  *In re Dish Network, LLC*, 28 FCC Rcd. 6574, 6593 ¶¶

46–47 (2013). Whether Defendant used its own employees, a dialing vendor, or another instrumentality to deliver the prerecorded portion of the call is therefore a factual matter for discovery, not a prerequisite to filing suit.

At bottom, Defendant asks this Court to resolve factual disputes and draw inferences in Defendant's favor, which is improper on a motion to dismiss. Taking the allegations as true and drawing all reasonable inferences in Plaintiff's favor, the Complaint plausibly alleges that Defendant directly initiated the unlawful telemarketing messages at issue. That is sufficient to state a claim for direct liability under the TCPA.

## II.      Defendant's Agency Arguments Address a Theory Plaintiff Does Not Assert.

Defendant devotes much of its motion to arguing that Plaintiff has not adequately pleaded actual authority, apparent authority, or ratification. Those arguments address a vicarious-liability theory that Plaintiff does not assert. The Complaint alleges that Defendant itself initiated the challenged prerecorded call and seeks to hold Defendant directly liable for its own conduct. ECF No. 1 ¶¶ 12, 15–21, 46–50. Plaintiff does not rely upon an allegation that an independently acting third-party telemarketer initiated the call and that its conduct must be imputed to Defendant through common-law agency principles. Defendant cannot defeat Plaintiff's direct-liability claim by first assuming the very factual proposition Plaintiff disputes—that some independent lead generator, rather than Defendant, initiated the call—and then demanding allegations sufficient to impute that hypothetical third party's conduct to Defendant. Defendant cannot defeat Plaintiff's direct-liability claim by assuming the very factual proposition Plaintiff disputes—that an independent lead generator, rather than Defendant, initiated the call—and then demanding allegations sufficient to impute that hypothetical third party's conduct to Defendant. The Complaint does not allege a known independent telemarketer whose conduct Plaintiff seeks to

11

attribute to Defendant. It alleges that Defendant initiated the call and supports that allegation with the uninterrupted transfer to Springfield, the continuation of the same solicitation, and Springfield's subsequent written confirmation of his affiliation with Defendant. Whether and how Defendant used personnel, technology, or outside service providers to implement its campaign are factual matters for discovery. Defendant's arguments concerning actual authority, apparent authority, and ratification therefore provide no basis to dismiss the direct-liability claim actually pleaded. At this stage, the Complaint's allegations and the reasonable inferences arising from the seamless transfer to Defendant's licensed insurance agent are sufficient to plausibly allege direct initiation. Defendant's arguments concerning actual authority, apparent authority, and ratification therefore provide no basis to dismiss the direct-liability claim actually pleaded.

Nor does the Complaint's reference to Defendant acting through its affiliates, agents, or other persons acting on its behalf constitute an admission that an independent third-party telemarketer initiated the call. A business entity necessarily conducts its affairs through individuals and other instrumentalities. The Complaint's use of alternative language concerning the persons through whom Defendant acted does not negate its express allegation that Defendant initiated the challenged call, particularly where the Complaint alleges specific facts connecting the uninterrupted solicitation to Defendant. Defendant's effort to treat that pleading language as a binding factual concession improperly draws an inference against Plaintiff.

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's Motion to Dismiss in its entirety and grant such other and further relief as the Court deems just and proper.

12

Respectfully submitted,

DATED: August 4, 2026                          **COOCH AND TAYLOR, P.A.**

*/s/ Dean R. Roland*
Dean R. Roland (No. 6459)
1000 North West St., Suite 1500
P.O. Box 1680
Wilmington, DE 19899-1680
(302) 984-3851
droland@coochtaylor.com

Anthony I. Paronich,  *Pro Hac Vice*
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(508) 221-1510
anthony@paronichlaw.com

*Attorney for Plaintiff and the Proposed Class*

13