IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| STEWART ABRAMSON, individually and on behalf of a class of all person and entities similarly situated, | : : : : | |
| Plaintiff, | : : | C.A. No. 26-772-MN |
| v. | : : | |
| SAFE LIFE POLICY, LLC, | : : | |
| Defendant. | : | |

## <u>DEFENDANT'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS</u>

OF COUNSEL:

FELLOWS LABRIOLA LLP
Steven M. Kushner
233 Peachtree Street NW Suite 2400
Atlanta, GA 30303
404-586-9200

HEYMAN ENERIO
GATTUSO & HIRZEL LLP
Aaron M. Nelson (#5941)
Denise S. Kraft (#2778)
Catherine M. Lynch (#7326)
222 Delaware Avenue, Ste. 900
Wilmington, DE 19801
302-472-7300

*Attorneys for Defendant Safe Life Policy, LLC*

Dated:  August 10, 2026

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT ........................................................................................................................... 1

    I.    PLAINTIFF'S OPPOSITION MISCHARACTERIZES THE COMPLAINT............. 1

        A.    The Complaint does not allege a "single, uninterrupted," "seamless" solicitation.................................................................................................. 2

        B.    The Complaint does not allege that Springfield was Safe Life's employee or agent........................................................................................................ 2

        C.    Plaintiff cannot disavow agency and simultaneously rely on a Complaint that pleads only agency........................................................................... 3

    II.    THE COMPLAINT DOES NOT PLAUSIBLY ALLEGE THAT SAFE LIFE "INITIATED" THE CALL................................................................................ 3

        A.    Direct liability requires that the defendant physically placed the call. ............. 3

        B.    The post-call transfer and Springfield's later email do not supply initiation. ................................................................................................ 4

        C.    The inference Plaintiff demands is speculation, not the "most natural" reading.................................................................................................... 5

    III.    PLAINTIFF'S ATTEMPTS TO DISTINGUISH THE CONTROLLING AUTHORITY FAIL. ................................................................................... 5

CONCLUSION........................................................................................................................ 7

## TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)............................................................................................6, 7

*Bank v. Consumer Tax Advocate, LLC*
   2025 WL 1640500 (E.D.N.Y. Feb. 5, 2025)...................................................4, 5

*Bank v. Spark Energy, LLC*
   2020 WL 5752185 (E.D.N.Y. Sept. 24, 2020) .....................................................5

*Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*,
   836 F.2d 173 (3d Cir. 1988).............................................................................1, 2

*In re Dish Network, LLC*,
   28 FCC Rcd. 6574 (2013) ................................................................................3, 7

*Hossfeld v. Allstate Ins. Co.*,
   179 F.4th 1046 (7th Cir. June 24, 2026) ..........................................................5, 6

*Jones v. Mutual of Omaha Insurance Co.*
   639 F. Supp. 3d 537 (D. Md. 2022) ..................................................................6, 7

*Nelums v. Mandu Wellness, LLC*,
   2023 WL 5607594 (D.N.M. Aug. 30, 2023) ........................................................5

*Ortega v. DiTommaso Inc.*
   2025 WL 440278 (W.D. Tex. Feb. 6, 2025)..........................................................6

*Tuso v. Lennar Corp.*,
   2024 WL 1239474 (S.D. Fla. Mar. 22, 2024)..................................................... 3, 4

*Usanovic v. Americana, L.L.C.*,
   775 F. Supp. 3d 1133 (D. Nev. 2025)....................................................................7

*Worsham v. TSS Consulting Grp., LLC*,
   2023 WL 2664203 (M.D. Fla. Mar. 28, 2023) ...........................................3, 4, 5, 6

**Statutes**

47 U.S.C. § 227(b) ............................................................................................5, 8

47 U.S.C. § 227(b)(1) ...........................................................................................3

**PRELIMINARY STATEMENT**

Plaintiff's Opposition does not defend the Complaint he filed—it defends a different complaint he wishes he had filed. The Complaint alleges that Plaintiff "received a call" delivering a prerecorded message from a voice identifying itself only as "Sophie," promoting a generic "senior final expense program" that never mentioned Safe Life. D.I. 1 ¶¶ 15–16. It alleges that, *after* that call, Plaintiff was "transferred to a live licensed insurance agent named Michael Springfield," who later emailed Plaintiff and stated that he "works with Safe Life Policy, LLC." *Id.* ¶¶ 19–21. And in its operative liability paragraphs, the Complaint attributes the challenged calls to "Defendant *and/or* their affiliates, agents, and/or other persons or entities acting on Defendant's behalf." *Id.* ¶¶ 47, 49, 50.

From those allegations, the Opposition constructs a narrative that appears nowhere in the pleading: a "single, uninterrupted telemarketing solicitation" in which Safe Life's "own licensed insurance agent" was "seamlessly" transferred the call and "continued the same solicitation." Opp. 1, 3–4. The Complaint says none of that. It does not allege that Springfield was Safe Life's employee, that the prerecorded "Sophie" message and Springfield were the same caller, or that Safe Life physically placed the call. Because a plaintiff may not amend his complaint through an opposition brief, and because the allegations Plaintiff actually pleaded do not plausibly allege that Safe Life "initiated" the call—the sole theory Plaintiff now presses—the Complaint should be dismissed.

**ARGUMENT**

**I.    PLAINTIFF'S OPPOSITION MISCHARACTERIZES THE COMPLAINT.**

Plaintiff's argument in his Opposition brief depends at every turn on characterizations of the Complaint that the pleading itself does not support. That is not a permissible way to defeat a motion to dismiss. The Court tests the allegations as pleaded, not as recast in a brief: "[i]t is

axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) (citation omitted). Three of the Opposition's central characterizations cannot be reconciled with the Complaint.

### A. The Complaint does not allege a "single, uninterrupted," "seamless" solicitation.

The phrases on which the Opposition builds its theory—"a single, uninterrupted telemarketing solicitation," "seamlessly transferred," "continued the same solicitation," and "no intervening event, separate solicitation, or independent transaction" (Opp. 3–4)—appear in Plaintiff's brief, not in his Complaint. The Complaint alleges only that Plaintiff "received a call that delivered artificial and or prerecorded voice messages" (¶ 15), quotes the "Sophie" script (¶ 16), and then alleges that "[d]uring this call, Plaintiff was transferred to a live licensed insurance agent named Michael Springfield" (¶ 19). It nowhere alleges that the prerecorded message and Springfield were part of one continuous, unbroken solicitation, that Springfield "continued the same solicitation," or that the "Sophie" message and Springfield originated from a single source. Those are the Opposition's inferences, supplied by counsel to fill the gaps in the pleading, and they cannot be treated as well-pleaded facts.

### B. The Complaint does not allege that Springfield was Safe Life's employee or agent.

The Opposition repeatedly describes Springfield as "Defendant's own licensed insurance agent" and "Defendant's own employee" who "continued the same solicitation." Opp. 3–4, 7, 10. The Complaint alleges the opposite of "own." It alleges that Springfield "works *with* Safe Life Policy, LLC" (¶ 21)—"with," not "for," and not "as an employee of." And the email Plaintiff describes did not even name the Defendant: it stated that Springfield was with "Safe Life *Insurance*," a different name than Defendant Safe Life *Policy, LLC*. ¶ 20. The Opposition's

2

repeated upgrade of "works with" into "Defendant's own agent" or "employee" is not a reasonable inference drawn from a well-pleaded fact; it is a substitution of language the pleader did not use.

### C. Plaintiff cannot disavow agency and simultaneously rely on a Complaint that pleads only agency.

The Opposition insists that Plaintiff asserts "direct liability" alone and that Safe Life's agency arguments "address a theory Plaintiff does not assert." Opp. 11–12. Plaintiff is entitled to make that election, but it is fatal rather than curative. The Complaint's operative liability paragraphs do not allege that Safe Life placed the call. They allege that the violations were committed by "Defendant *and/or* their affiliates, agents, and/or other persons or entities acting on Defendant's behalf." ¶¶ 47, 49, 50 (emphasis added). That hedged, disjunctive language is an admission that Plaintiff does not know who placed the call and cannot allege that Safe Life did. Having now expressly abandoned any theory of vicarious liability (Opp. 11–12), Plaintiff is left with a Complaint whose only liability allegations sound in agency—the very theory he disclaims. He cannot rewrite ¶¶ 47, 49, and 50 to read "Defendant" standing alone when the words he chose were "and/or . . . persons or entities acting on Defendant's behalf."

## II. THE COMPLAINT DOES NOT PLAUSIBLY ALLEGE THAT SAFE LIFE "INITIATED" THE CALL.

Because Plaintiff proceeds solely on a theory of direct liability, the dispositive question is whether the Complaint plausibly alleges that Safe Life itself "initiate[d]" the challenged call. 47 U.S.C. § 227(b)(1). It does not.

### A. Direct liability requires that the defendant physically placed the call.

Direct liability under the TCPA reaches only the entity that places the call. "[A] person or entity 'initiates' a telephone call when it takes the steps necessary to physically place a telephone call." *In re Dish Network, LLC*, 28 FCC Rcd. 6574, 6582–83 (2013). Direct liability thus "applies only to entities that 'initiate' the telemarketing calls," and "this generally does not include persons

3

or entities . . . that might merely have some role, however minor, in the causal chain that results in the making of a telephone call." *Tuso v. Lennar Corp.*, 2024 WL 1239474, at *3 (S.D. Fla. Mar. 22, 2024) (quotation omitted); *accord Worsham v. TSS Consulting Grp., LLC*, 2023 WL 2664203, at *5 (M.D. Fla. Mar. 28, 2023).

The Complaint alleges none of this. It alleges that Plaintiff "received" a prerecorded call from "Sophie" about a generic program that never identified Safe Life. ¶¶ 15–16. It does not allege that Safe Life owned or operated the dialing equipment, that any caller identification or callback number was traced to Safe Life, or any other fact showing that Safe Life "to[ok] the steps necessary to physically place" the call. On the face of the pleading, the identity of the entity that placed the "Sophie" call is unknown—which is precisely why the Complaint falls back on "and/or . . . persons or entities acting on Defendant's behalf." ¶¶ 47, 49, 50.

**B.      The post-call transfer and Springfield's later email do not supply initiation.**

The only facts Plaintiff musters are the transfer to Springfield and Springfield's after-the-fact statement that he "works with" Safe Life. But courts squarely hold that a transferred speaker's self-identification does not establish that the seller placed the call. In *Worsham*, the court held—on a full summary-judgment record—that representations by a live speaker that he "worked for" the defendant were "simply not enough," and that the plaintiff "ha[d] not established that either Defendant ever initiated any of the calls . . . ." 2023 WL 2664203, at *5. If such a representation is legally insufficient to show initiation on a developed evidentiary record, an allegation of the very same thing cannot cross the plausibility threshold on a bare pleading.

The other authorities are to the same effect. In *Tuso*, a live agent affirmatively identified the seller on the call ("Danielle from Lennar"), yet the complaint still failed because the caller's identification did not show that the named defendant initiated the call. 2024 WL 1239474, at *3. In *Bank v. Consumer Tax Advocate, LLC*, the court recommended dismissal where "the only

4

allegation is that 'a telephone call was placed,'" and where the plaintiff "fail[ed] to allege that anyone confirmed that the call was made by or on behalf of" the defendant. 2025 WL 1640500, at *7 (E.D.N.Y. Feb. 5, 2025). And in *Bank v. Spark Energy, LLC*, the court dismissed a § 227(b) claim because "not one single factual statement" in the complaint connected the calls to the defendant. 2020 WL 5752185, at *5 (E.D.N.Y. Sept. 24, 2020). Here, as in those cases, no allegation connects *placing* the "Sophie" call to Safe Life.

### C. The inference Plaintiff demands is speculation, not the "most natural" reading.

Plaintiff argues that "[t]he most natural inference" is that the prerecorded message and the transfer were "components of a single telemarketing campaign sent by the same caller." Opp. 4. It is not. The pattern the Complaint actually describes—a generic prerecorded message that identifies no seller, followed by the transfer of an interested consumer to a licensed agent—is the hallmark of an independent lead generator that screens consumers and routes qualified prospects to insurers. *See Hossfeld v. Allstate Ins. Co.*, 179 F.4th 1046, 1055-56 (7th Cir. June 24, 2026) (describing a screening-and-transfer model in which telemarketers transferred only interested prospects down a subcontracting chain the seller neither knew of nor directed); *Nelums v. Mandu Wellness, LLC*, 2023 WL 5607594, at *8–9 (D.N.M. Aug. 30, 2023) (transfer of a consumer "to complete the purchase" insufficient to show the seller controlled or initiated the call). At the pleading stage the Court draws reasonable inferences in Plaintiff's favor, but it does not credit speculation; where the alleged facts are "merely consistent with" liability, they "stop[] short of the line between possibility and plausibility . . . ." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted).

### III. PLAINTIFF'S ATTEMPTS TO DISTINGUISH THE CONTROLLING AUTHORITY FAIL.

Plaintiff's Opposition (at 8–10) tries to distinguish Safe Life's authorities. Each attempt misfires.

*First*, Plaintiff sets *Worsham* aside because it arose on summary judgment. Opp. 10. But *Worsham*'s relevant holding is legal, not evidentiary: a transferred speaker's representation that he "worked for" or "with" the defendant is "simply not enough" to establish initiation. 2023 WL 2664203, at *5. That principle applies *even more so* at the pleading stage—and the Complaint here alleges even less than the *Worsham* plaintiff, who at least tied specific prerecorded messages to specific numbers through certified phone records.

*Second*, Plaintiff argues that, unlike the plaintiff in *Spark Energy*, he pleaded the live-representative identification that the *Spark Energy* plaintiff had omitted. Opp. 9. That distinction helps Safe Life. The lesson of *Spark Energy* is that a live representative's statement that a call was placed on the seller's behalf is the *agent's* statement; it does not connect the *placing* of the call to the seller. Pleading the transfer therefore does not cure the defect—no fact alleges that Safe Life physically placed the "Sophie" call. *See also Hossfeld*, 179 F.4th 1046, 1056-577 ("Statements by an agent are insufficient to create apparent authority"; "only the words or conduct of the alleged principal, not the alleged agent," are probative) (citations omitted).

*Third*, Plaintiff says *Consumer Tax Advocate* involved "virtually no factual allegations" connecting the call to the defendant. Opp. 8. The one dispositive allegation missing there is missing here too: a fact showing that the named defendant *placed* the call. The Complaint here likewise alleges only that a call "was" received (¶ 15) and that unnamed "persons or entities acting on Defendant's behalf" are responsible (¶¶ 47, 49, 50). The cases in which dismissal was *denied* only underscore what is absent here. In *Ortega v. DiTommaso Inc.*, the caller transferred the plaintiff directly to a named *owner* of the defendant, who then texted the plaintiff from the defendant's own business, and the defendant *admitted* it hired third parties to call "on its behalf." 2025 WL 440278, at *1, 6 (W.D. Tex. Feb. 6, 2025). And in *Jones v. Mutual of Omaha Insurance Co.*, the plaintiff

6

pleaded concrete control—that the seller dictated call volume, dictated the states into which calls could be made, and retained the power to forbid prerecorded technology—and was transferred to a person who identified himself as the seller's *employee* and gave the seller's own callback number. 639 F. Supp. 3d 537, 543, 551 (D. Md. 2022). The Complaint here has none of those facts.

*Fourth*, Plaintiff argues that requiring him to plead Safe Life's "internal mechanics" imposes a heightened standard and that such matters are "for discovery." Opp. 10, 14–15. That inverts the pleading burden. *Dish Network* holds that a seller is directly liable only if it "initiates" the call by "tak[ing] the steps necessary to physically place" it, 28 FCC Rcd. at 6582–83; it does not relieve a plaintiff of alleging a plausible factual basis for direct initiation in the first place. "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678–79. Safe Life does not ask the Court to resolve how any campaign was run; it asks the Court to hold Plaintiff to his burden of alleging that Safe Life placed the call at all—which he has not done. *See also Usanovic v. Americana, L.L.C.*, 775 F. Supp. 3d 1133, 1140–42 (D. Nev. 2025) (dismissing *with prejudice* where the plaintiff alleged far more than Plaintiff does here and still failed to plead initiation or control).

## CONCLUSION

For these reasons, and for the reasons set forth in Safe Life's Opening Brief, the Complaint fails to state a claim under 47 U.S.C. § 227(b) and should be dismissed.

HEYMAN ENERIO
GATTUSO & HIRZEL LLP

/s/ Denise S. Kraft
Aaron M. Nelson (#5941)
Denise S. Kraft (#2778)
Catherine M. Lynch (#7326)
222 Delaware Avenue, Ste. 900
Wilmington, DE 19801
302-472-7300
anelson@hegh.law
dkraft@hegh.law
clynch@hegh.law
Attorneys for Defendant Safe Life Policy, LLC

OF COUNSEL:

FELLOWS LABRIOLA LLP
Steven M. Kushner
233 Peachtree Street NW Suite 2400
Atlanta, GA 30303
404-586-9200
skushner@fellab.com

Dated:  August 10, 2026

8